Samuel Eaton (ISB No. 8974)
Office of Species Conservation
304 N. 8th St., Ste. 149
Boise, ID 83702
(208) 334-2189
(208) 334-2172 (Fax)
sam.eaton@osc.idaho.gov

Attorney for Proposed Defendant-Intervenor, Governor C.L. "Butch" Otter

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, CONSERVATION NORTHWEST, IDAHO CONSERVATION LEAGUE, SELKIRK CONSERVATION ALLIANCE, and THE LANDS COUNCIL;** | Case No. 1:13-CV-00427-EJL |
| | **GOVERNOR C.L. "BUTCH" OTTER'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |
| Plaintiffs, | |
| v. | |
| **BRIAN KELLY, U.S. Fish and Wildlife Service Idaho State Supervisor, and U.S. FISH AND WILDLIFE SERVICE;** | |
| Defendants, | |
| and | |
| **IDAHO GOVERNOR C.L. "BUTCH" OTTER;** | |
| Proposed Defendant-Intervenor. | |

### I.   INTRODUCTION

C.L. "Butch" Otter, Governor of the State of Idaho, submits this memorandum in support of his motion to intervene in the present action as Defendant-Intervenor. The Plaintiffs challenge the U.S. Fish and Wildlife Service's ("Defendant" or "Service") final rule designating critical habitat for the southern Selkirk Mountains population of woodland caribou (Selkirk caribou)

under the Endangered Species Act (ESA). The final critical habitat designation consists of 30,010 acres spread across northeast Washington and north Idaho.

On behalf of the State, Governor Otter intends to defend the Service's final critical habitat designation, which includes over 6,000 acres of land within Idaho's borders. The State of Idaho has a number of interests that are separate and distinct from Defendant's that would be inadequately represented without intervention. The State has a sovereign interest in managing all wildlife within its borders, and the outcome of this case may have a direct effect on a number of Idahoans' way of life, as well as the local economy in north Idaho. With these interests in mind, Governor Otter requests to intervene as defendant in this litigation as a matter of right under FED. R. CIV. P. 24(a), or, in the alternative, to intervene permissively under FED. R. CIV. P. 24(b).

## II. FACTUAL AND PROCEDURAL BACKGROUND

As Chief Executive, the Governor of Idaho is charged with ensuring that laws of the State are faithfully executed. IDAHO CONST. art. IV, § 5; *see also*, IDAHO CODE § 67-802. As president of the State Land Board, the Governor also has a duty to oversee public lands of the State, which includes managing State lands with the goal of providing income distributions to State endowment funds. IDAHO CODE § 58-104. In addition, the Governor's Office of Species Conservation (OSC) is statutorily tasked with coordinating State activities and negotiating agreements with federal agencies concerning threatened or endangered species under the ESA. Miller Decl. ¶¶ 5, 6; *see also*, IDAHO CODE § 67-818.

The State has been heavily involved with Selkirk caribou management and monitoring. Since the early 1980's, well before the Selkirk caribou population was listed as endangered, the Idaho Department of Fish and Game (IDFG) has been involved in "population management (including translocation of caribou to the Selkirks from British Columbia), information and

education (I&E), and enforcement efforts to conserve Selkirk woodland caribou." Unsworth Decl. ¶ 7. State expenditures related to this federally managed species average greater than $10,000 per annum. *Id*. Additionally, the State of Idaho has been heavily involved with all federal processes related to Selkirk caribou population in Idaho and, in this particular case, submitted comments on the proposed critical habitat designation to the Service. *Id*. ¶ 13; Miller Decl. ¶ 10.

The State's comments primarily questioned the Service's initial critical habitat proposal, and after receiving similar comments from other interested parties and peer reviewers, the Service decided to reexamine their initial proposal. Unsworth Decl. ¶ 13. Ultimately, the State wishes to see the Selkirk caribou become a state-managed population without the need for federal protection; however, the Service's final critical habitat rule appropriately designates those areas occupied by the Selkirk caribou at the time of listing and essential for its conservation. Miller Decl. ¶ 14.

### III. LEGAL STANDARD

An interested party may be permitted to intervene as of right pursuant to FED. R. CIV. P. 24(a) or permissively under FED. R. CIV. P. 24(b). Traditionally, Rule 24 is construed liberally in favor of the applicants for intervention, so long as all the elements for intervention have been met. *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013). When assessing a motion for intervention, courts accept as true all "well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

## IV.     DISCUSSION

### A. Governor Otter Should be Permitted to Intervene as of Right under Rule 24(a).

An applicant who seeks to intervene as of right under Rule 24(a) must show that: (1) The motion is timely; (2) the applicant has a significant protectable interest related to the property or transaction that is the subject matter of the litigation; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Courts, when analyzing motions for intervention under Rule 24(a), are guided by practical and equitable considerations, as opposed to technical distinctions. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *Berg*, 268 F.3d at 818. Additionally, allowing intervention can "prevent or simplify future litigation involving related issues," while also allowing "an additional interested party to express its views before the court." *Greene v. U.S.*, 996 F.2d 973, 980 (9th Cir. 1993).

#### i. The Governor's Motion is Timely.

When analyzing whether a motion to intervene is timely, courts consider "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996). Plaintiffs in this case filed their complaint on September 30, 2013, and Defendant filed their answer on December 23, 2013, only seven days prior to the Governor submitting his motion to intervene and supporting documents. At this time, the Court has not yet established a briefing schedule nor has the Court made any dispositive rulings. Intervention at this stage of the proceedings will not prejudice the original parties.

Furthermore, the Office of Governor C.L. "Butch" Otter and OSC have been in contact with the Kootenai Tribe of Idaho and Boundary County. To the extent practicable, the Governor will seek to work cooperatively with these governmental entities in an effort to minimize the burden to the Court and maximize judicial economy. For the foregoing reasons, the timeliness requirement has been met.

        ii.  <u>Governor Otter has Significant Protectable Interests Related to the Subject Matter of this Action</u>.

An applicant for intervention must show some significantly protectable interest. *Greene*, 996 F.2d at 976. However, this is only a practical, threshold question and the applicant does not need to establish specific legal or equitable interests. *Id*. Intervention as of right under 24(a)(2) generally requires that the "interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *The Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal citation omitted). The Ninth Circuit further refined this notion by holding that a sufficient protectable interest exists, for purposes of intervention, if the applicant will "suffer a practical impairment of its interests as a result of the pending litigation." *Id*. Nonetheless, an economic interest must be more than a "bare expectation," often related to real or personal property rights. *Berg*, 268 F.3d at 820.

Here, Governor Otter, as Chief Executive for the State of Idaho, has legally protectable interests and will suffer a practical impairment if the Plaintiffs are granted the remedies they seek. The State, as an independent sovereign, is actively working towards the eventual State management of the Selkirk caribou. Under State management, the Governor is partially responsible for ensuring that wildlife is "preserved, protected, perpetuated and managed." IDAHO CODE § 36-103. The Governor firmly believes the final critical habitat designation

accurately reflects the area needed for recovery and furthers the State's interest in seeing the Selkirk caribou eventually become a state-managed population. A larger designation, such as one supported and sought by Plaintiffs, would unreasonably hinder the State's interest in managing wildlife within its borders.

Also, the Office of the Governor and OSC, along with IDFG and several other State agencies, have invested hundreds of hours attending public meetings, coordinating with the relevant federal agencies, sovereigns, and counties, and drafting and reviewing comments. Unsworth Decl. ¶ 8. In addition, IDFG expenditures related to the current Selkirk caribou management framework exceeds $10,000 per year. *Id*. ¶ 7. Now, with the addition of a critical habitat designation, State expenditures related to Selkirk caribou are likely to increase.

Similarly, the State has a significant economic interest tied to the outcome of this case that goes beyond mere "bare expectations." The State of Idaho is comprised of over 60% federal land, and all of the caribou critical habitat in Idaho occurs within this federally managed land. Miller Decl. ¶ 13. It follows logically that a large portion of Idaho's economy is dependent on access to, and use of, these federal lands. However, the final critical habitat designation's impact on Idaho's economy is minimal when compared to the original proposed habitat designation, which included an additional 295,000 acres and consisted of federal, private, and State lands. Undoubtedly, an expansion or revision to the critical habitat would impact, *inter alia*, local employment, recreation, and tourism, as well as State and private interests associated with these federal lands. The foregoing illustrates the significant protectable interests the Governor has related to the subject matter at issue in this case; and therefore, Governor Otter satisfies the second prong under Rule 24(a).

      iii. <u>Disposition of this Case may Impair or Impede the Governor's Ability to Protect the State's Interest</u>.

The third requirement under a motion to intervene as of right is satisfied if the applicant would be affected, as practical matter, by the outcome of the case. *Berg*, 268 F.3d at 822. After a finding that a proposed-intervenor has significant protectable interests, courts typically have "little difficulty concluding that the disposition of the case may, as a practical matter, affect [those interests]." *Citizens for Balanced Use v. Montana Wilderness Ass'n.*, 647 F.3d 893, 898 (9th Cir. 2011). As previously stated, the Governor has a number of significant protectable interests, and it follows logically that the outcome of this case will affect those interests.

In particular, the local citizens and businesses within the State and local counties will be those most practically affected by a decision favorable to Plaintiffs. The final critical habitat designation has already been published and relied upon, and any change or uncertainty related to this designation will undoubtedly affect those citizens and businesses that work in or around the area designated as critical habitat.

An adverse decision would further frustrate the Governor's goal of state management, which would be greatly hindered by a decision setting aside the final critical habitat designation. Also, because of the potential impacts to the State of Idaho, the State submitted comments that were heavily referenced by the Service when developing its final critical habitat designation. Therefore, Plaintiffs' request for an injunction and/or to set aside the final rule would, as a practical matter, affect the Governor's aforementioned protectable interests.

      iv. <u>The Existing Parties do not Adequately Represent the Governor's Interests</u>.

The burden of showing that the current representation is inadequate is minimal. *Nw. Forest Res. Council*, 83 F.3d at 838. It is sufficient for the proposed-intervenor to demonstrate

Memorandum in Support of
Governor Otter's Motion to Intervene - 7

that the representation "may be inadequate." *Id*. To establish whether the applicant's interests are adequately represented, courts often look to determine if "(1) the interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments; (2) the present party is capable of and willing to make such arguments; and (3) the intervenor would not offer any necessary element to the proceedings that the other parties would neglect." *Fresno Cnty v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980).

The Service, as the federal Defendant, will likely not make the same arguments as Governor Otter, especially if arguing remedies. The Service is the federal agency tasked with developing rules and regulations under the ESA and ensuring that the statutory provisions, along with the supplemental rules and regulations, are enforced. The Service will defend their final critical habitat designation to the extent it relates to procedural and substantive compliance with the ESA and APA. While the Service is required to consider public and private interests during the rulemaking process, they are not required to, nor will they, represent State and local interests during litigation.

On the other hand, Governor Otter, as Chief Executive, has a broad interest in all activities occurring on lands within the State, regardless of who holds title, as well as the potential economic impacts this case may have locally and statewide. The citizens and various interests within the State of Idaho are the ones that will suffer the real effects from an adverse ruling; whereas, the Service will only be required to start the procedural process over again. With such divergent interests, the Service is not capable of adequately making arguments on behalf of the Governor and the State of Idaho.

Finally, the Governor would provide helpful elements to the proceedings, including the State's role in the final habitat designation and its sovereign interest in managing the Selkirk

caribou population. Additionally, since the State's interests are unique and heavily implicated, Governor Otter should be included when formulating a remedy, if any. Should the Service agree to negotiate settlement terms, there is no guarantee that the Service will do so with the interests of the Governor and the State in mind.

The overarching purpose of intervention is to allow interested parties an opportunity to meaningfully participate in a suit that has potential to impact their unique interests. Here, Governor Otter has a number of unique interests, which are distinguishable from the Service's. Therefore Governor Otter should be allowed to intervene as of right under Rule 24(a).

### B. In the Alternative, Governor Otter should be Permitted to Intervene Permissively.

A court may also grant permissive intervention under Rule 24(b) if the proposed-intervenor meets the following conditions: "(1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common." *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). The analysis for permissive intervention focuses on the interests of existing parties. Courts will often consider whether intervention will unduly delay or prejudice the original parties' rights, as well as the potential effect on judicial economy. *Id*. at 530-31.

If the Governor does not meet the requirements in order to intervene as of right, this Court should exercise its broad discretion and allow the Governor to intervene permissively under Rule 24(b). The first requirement under Rule 24(b), independent jurisdiction, is satisfied because this case involves judicial review of a federal administrative rule published according to the requirements under the ESA and APA. Review of such an action provides the District Court with federal question jurisdiction pursuant to U.S.C. § 1331.

The second requirement for permissive intervention, timeliness, has also been satisfied as set forth in the Governor's argument requesting intervention as of right. To reiterate briefly, the motion is timely because the Court has not rendered any decisions on the merits, a litigation schedule has not been published, and the Defendant only just submitted their answer a few days prior. The Governor has provided this memorandum, along with his motion and answer, and is prepared to participate in this litigation on schedule with Defendant.

Finally, many of the Governor's defenses, issues, and facts are likely similar to the ones raised by the Service, except Governor Otter seeks to intervene in order to defend the State's unique interests and aid in the judicious and equitable resolution to this case. The Governor satisfies the requirements for permissive intervention; therefore, the Court should exercise its discretion in favor of granting intervention.

V.   CONCLUSION

Governor Otter should be allowed to intervene in this case in order to protect his unique interests and defend against Plaintiffs' numerous claims, including their request that the final critical habitat rule for Selkirk caribou be set aside. The Governor has met the requirements for intervention as a matter of right and requests that this court grant his motion pursuant to FED. R. CIV. P. 24(a). In the alternative, the Governor requests this Court to exercise its broad discretion and grant his motion to intervene permissively in accordance with FED. R. CIV. P. 24(b).

DATED this 23rd day of December, 2013.

/s/ *Samuel Eaton*
Samuel Eaton
Attorney for Governor Otter

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2013, I caused to be electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Idaho by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case may not be registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party for commercial carrier for delivery within 3 calendar days to the following non-CM-ECF participants:

[NONE]

                                                  Respectfully submitted,

                                                  /s/ *Samuel Eaton*
                                                  Samuel Eaton
                                                  Attorney for Governor Otter