UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, CONSERVATION NORTHWEST, IDAHO CONSERVATION LEAGUE, SELKIRK CONSERVATION ALLIANCE, and THE LANDS COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN KELLY, U.S. Fish and Wildlife Service Idaho State Supervisor, and U.S. FISH AND WILDLIFE SERVICE,<br><br>Defendants. | Case No. 1:13-CV-00427-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Pending before the Court are motions to intervene filed by the Kootenai Tribe of Idaho; Boundary County, Idaho; and Idaho Governor C.L. "Butch" Otter. All three movants[1] move to intervene as Defendants in support of the United States Fish and

---

[1] A fourth motion to intervene was filed on April 30, 2014, by movants Idaho State Snowmobile Association, Inc., and Bonner County. (Dkt. 33.) The Court will address that motion in a separate report.

**REPORT AND RECOMMENDATION - 1**

Wildlife Service's designation of critical habitat for the southern Selkirk Mountains population of woodland caribou. Each movant seek to intervene as a matter of right, or alternatively, permissively, under Fed. R. Civ. P. 24. Only Plaintiffs oppose the motions.[2]

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter will be decided on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1. For the reasons stated below, the Court will grant the motions.

## BACKGROUND[3]

Mountain caribou require large contiguous areas of high-elevation old growth coniferous forests with little or no disturbance from vehicles or other human activities. The primary threats to mountain caribou are habitat loss or fragmentation such as from timber harvest or wildfire, disturbances that displace caribou from their habitat such as snowmobile use in winter or off-road vehicle use in summer, and predation. These animals make movements between seasonal habitat types. Mountain caribou currently

---

[2] United States District Judge Edward Lodge referred resolution of non-dispositive motions to the undersigned and directed entry of an appropriate order. (Dkt. 18.) Denial of a motion to intervene may be dispositive with respect to the movants' claims. *See* 28 U.S.C. § 636(b)(1)(B); *but see Los Cangris v. UMG Recordings, Inc.*, 2012 WL 1952824 (D. Puerto Rico May 30, 2012) (recognizing split of authority regarding the dispositive nature of motions to intervene, but deciding that such motions do not dispose of a party's claim because the applicants are not parties to the action); s*ee also Zepeda v. PayPal, Inc.*, 2014 WL 1653246 (N.D. Cal. 2014) (citing *Los Cangris*, and finding motion to intervene was not dispositive because it was not listed in 28 U.S.C. § 636(b)(1)(A)). Because of the split of authority, the Court issues a report and recommendation. *See Magnus Pacific Corp. v. Advanced Explosives Demolition, Inc.*, No. 2:13-cv-0060-EJL-CWD, 2013 WL 6095427 (D. Idaho Nov. 20, 2013).

[3] The background information is taken from the Complaint in this matter. The Court makes no factual findings by setting forth the background for the dispute.

**REPORT AND RECOMMENDATION - 2**

occupy mountainous terrain in eastern British Columbia and the Selkirk Mountains of northern Idaho and northeast Washington.

Due to the imperiled status of the southern Selkirk Mountains population of caribou, this population was emergency listed as endangered under the ESA on January 14, 1983 (48 Fed. Reg. 1722) and a final listing rule was published on February 29, 1984 (49 Fed. Reg. 7390). At the time of listing, only an estimated 25-30 animals existed in the population. Recovery Action Plans for the southern Selkirk Mountains woodland caribou written by the Woodland Caribou Recovery Team set a goal of 125 animals for this population. The current population is still below that goal.

In 2002, a coalition of environmental groups petitioned the Service to designate critical habitat for the endangered southern Selkirk Mountains caribou. The coalition sued the Service in 2009. A settlement of that lawsuit resulted in a proposed critical habitat rule being issued on November 30, 2011 (76 Fed. Reg. 74,018), and a final rule on November 28, 2012 (77 Fed. Reg. 71,042). The proposed rule designated 375,562 acres of critical habitat. After considerable input,[4] the Service completed a draft final rule selecting 227,100 acres of critical habitat for the final designation, and sent it to the Regional Office for preliminary review near the end of July 2012.

In September of 2012, the Service significantly reduced the critical habitat designation. The new recommendation eliminated all critical habitat in Idaho except a small area near the borders of Washington and Canada, and resulted in a total of 30,010 acres of critical habitat. The new recommendation included only federal land, with no

---

[4] The review process is described in the Complaint.

**REPORT AND RECOMMENDATION - 3**

critical habitat on state or private land. The final designation included 6,029 acres of federal land in Idaho. The Service did not allow for additional public comment on the revised version of the critical habitat designation before it issued the final rule.

Plaintiffs ask the Court to set aside the final critical habitat designation for the southern Selkirk Mountains population of woodland caribou and to order the Service to complete a new critical habitat rule that complies with the law.

The applicants move to intervene under Fed. R. Civ. P. 24(a) or (b) because of their respective interests in managing federal land, their economic interests, and tribal interests. Collectively, the movants contend that any action that would affect the final designation of critical habitat by expanding its boundaries, as Plaintiffs propose, would adversely affect these interests. The movants argue they each have a distinct and substantial interest in this litigation.

## ANALYSIS

**1. LEGAL STANDARD**

The Federal Rules of Civil Procedure set forth two types of intervention: 1) as a matter of right and 2) permissive. *See* Fed. R. Civ. P. 24(a)(2), 24(b). To intervene as of right under Rule 24(a)(2), the proposed intervenor must demonstrate: (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the motion is timely; and (4) the applicant's interest may be inadequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Servs.*, 630 F.3d 1173, 1177 (9th Cir. 2011). The party

**REPORT AND RECOMMENDATION - 4**

seeking to intervene bears the burden of showing all requirements for intervention have been met. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002); *see also Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("failure to satisfy any one of the requirements is fatal to the application"). In determining whether intervention is appropriate, courts are guided primarily by practical and equitable concerns, and the requirements for intervention are broadly interpreted in favor of intervention. *City of Los Angeles*, 288 F.3d at 397, *cited in Wilderness Soc.*, 630 F.3d at 1179.

An applicant who seeks permissive intervention under Rule 24(b)(2) must prove it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.1998). The court must also consider whether "intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*.; *see* Fed. R. Civ. P. 24(b)(3).

## 2. INTERVENTION AS OF RIGHT

Although the only aspect of the four part test Plaintiffs challenge is whether each respective intervenor's interests are impaired, the Court must still examine and determine the particulars of each application under all of the factors.

### A. Protectable Interest

A sufficient protectable interest in an action for purposes of intervention is a "practical, threshold inquiry." *City of Los Angeles*, 288 F.3d at 398. No specific legal or equitable interest needs to be established. *Id*. By allowing a party with a practical interest

in the outcome of the case to intervene, courts prevent or simplify future litigation and allow additional interested parties to express their views before the court. *See Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). But, the movant must demonstrate a significant interest protected by some law and related to the plaintiff's claim. *City of Los Angeles*, 288 F.3d at 398. *See also Wilderness Soc.*, 630 F.3d at 1180 ("intervenor will generally demonstrate a sufficient interest for intervention of right … if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'").

The Kootenai Tribe describes its interest in managing its access to Treaty hunting, fishing and gathering sites, as well as its efforts to restore and recover the caribou, which historically inhabited Kootenai Territory. The Tribe actively participated in the rule making process.

Boundary County contends that its interest derives from the economic impact of the critical habitat designation. The majority of Boundary County is owned by state and federal government, and the county has a protectable interest in promoting recreation and tourism within its borders, as well as managing grazing and livestock permits. Boundary County contends that revision of the critical habitat designation could impact its ability to utilize or promote recreation and tourism within its borders, and adversely affect livestock and grazing, thereby impacting local businesses and employment opportunities.

Governor Otter's interests stem from the State of Idaho's policy to actively work toward the state management of woodland caribou within state borders. The Governor

**REPORT AND RECOMMENDATION - 6**

contends that the current critical habitat designation accurately reflects the necessary recovery area, and opposes a larger designation because such a designation would hinder the State's interest in managing wildlife within its borders. An additional concern is the increase in state expenditures to manage caribou should the habitat area increase. The State of Idaho actively participated in the rulemaking process.

Plaintiffs do not dispute that the above interests are significant. The Court, taking the allegations as true as it is required to do, finds that the abrogation of the rule, and the uncertainty resulting from the need to promulgate a new critical habitat designation, would have an impact upon the various interests asserted by each of the three applicants for intervention. The impact upon the Kootenai Tribe speaks to their historical Treaty rights upon the land designated as critical habitat. Boundary County has identified economic losses from the expansion of the critical habitat designation. And Governor Otter has identified an economic impact as well as a policy impact, considering the policy objectives to manage wildlife within Idaho's borders.

### B. Impaired Ability to Protect Interest

This question is a practical one, and the rule is satisfied whenever disposition of the action would put the applicant at a practical disadvantage in protecting its interest. *See* 7C Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1908.2 at 368 (3d ed. 2007 & Supp. 2010). Generally, if the applicant would be substantially affected in a practical sense by the determination of an action, he should be allowed to intervene. *See* Fed. R. Civ. P. 24 (advisory committee notes); *Arakaki v. Cateyano*, 324

F.3d 1078, 1086 (9th Cir. 2003) (citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Plaintiffs argue that the evidence and explanations provided by the proposed intervenors do not adequately address how a new critical habitat designation would actually impair their rights and interests. For example, Plaintiffs contend the Kootenai Tribe provies no explanation as to how a new critical habitat rule expanding critical habitat for woodland caribou would impair the Tribe's interest in recovery for the species. Similarly, Plaintiffs assert Boundary County has not provided sufficient evidence that a larger critical habitat designation would actually cause any change to livestock grazing or access to land for recreational or other purposes. And finally, Plaintiffs contend the State of Idaho has not explained how a new critical habitat designation would impair the State's interest in managing the species.

In other words, Plaintiffs contend the Applicants' arguments are speculative and conclusory. But the Court must accept all nonconlcusory allegations submitted in support of intervention, and is directed to construe the factors broadly. Further, a proposed intervenor need not show that impairment is an "absolute certainty." *Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.*, No. 2:13-CV-0060-EJL-CWD, 2013 WL 6095427, at *4 (D. Idaho Nov. 20, 2013) (quoting *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011).

If Plaintiffs are granted the relief they request, the Service may need to conduct additional assessments, and eventually will draft a new critical habitat rule. Plaintiffs seek a larger area designated as critical habitat. Such a revision to the habitat designation will

likely include more land within Idaho's borders, considering this was the intent expressed in the draft rule. Subjecting the proposed intervenors---the Tribe, Boundary County, and the state of Idaho---to further review and uncertainty will have a fiscal impact, as well as other impacts.

For instance, the Tribe is opposed to increasing the critical habitat area, because it wants finality with regard to the critical habitat designation. The Tribe opposed the proposed rule, and supports the current rule. Further changes will, as the Tribe has described, impact their tribal members' access to Treaty hunting, fishing and gathering cites, and impair their ability to move forward with the Tribe's own recovery efforts to protect the woodland caribou.

Similarly, Boundary County describes that any change in the scope of critical habitat will have a legal and economic impact upon the use of land within its borders. The County explains that, if grazing permits affect critical habitat, land managers will need to comply with the Endangered Species Act. On an economic level, an increase in habitat designation could force existing grazing operations to relocate outside of the county, reducing the income derived from grazing operations within the county.

Finally, the State of Idaho explains that an increase in habitat scope will require revising the State's monitoring, education, and protection efforts related to the caribou population. In conjunction with those efforts, the State will require additional expenditures to manage those activities.

Although the precise parameters of the interests are not definite or certain at this time, the Court is satisfied that the sum of such interests is significant, and the identified

**REPORT AND RECOMMENDATION - 9**

interests may be impaired by this action. If the proposed intervenors are not included, they may lose the opportunity to make the Court aware of the specific extent of the impact the rule abrogation will have on their respective interests. Although the result will be the drafting of a new rule, which may not occur for some time, Plaintiffs are advocating for an increase in the critical habitat area. Such an increase will, according to the proposed intervenors, have a negative impact upon the interests they identified. Should the Court proceed and grant the relief requested, they will have lost the opportunity to protect their interests and limit the impact of the critical habitat rule.

### C. Adequate Representation

The Court considers three factors to determine the adequacy of representation: (1) whether the interest of a present party is such that it undoubtedly will make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki*, 324 F.3d at 1086. The burden on proposed intervenors in showing inadequate representation is minimal, and is satisfied if they demonstrate that representation of their interests "may be" inadequate. *Id*.

The most important factor among the above three is how the proposed intervenor's interest compares with the interests of the existing parties. *Perry*, 587 F.3d at 947 (citing *Arakaki*, 324 F.3d at 1086). But where the party and proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the

intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Id*.

Intervenors focus generally upon the differing interests of the Service, on the one hand, whose interests are global, versus the intervenors' respective interests, which are local. Although intervenors would join Defendants, the Service would not represent state and local interests during litigation. On the other hand, the state of Idaho has an interest in activities occurring on lands within its borders. So, too, does the County. The County's interests are more local. And finally, the Kootenai Tribe's interests are unique to them and their cultural ties to the land.

Although the Service and proposed intervenors are all working to defend the current critical habitat rule, they have different reasons and policy directives for doing so. The impact of any revision to the rule will be suffered by intervenors, not the Service. The Court therefore considers intervenors to have made the necessary showing.

### D. Timely Motion

To determine whether a motion is timely, the Court considers (1) the stage of the proceedings at which intervention is sought; (2) prejudice to the other parties, and (3) the reason for and length of any delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Plaintiffs' filed their complaint on September 30, 2013. The Court entered its litigation order setting certain deadlines on October 1, 2013. The Kootenai Tribe, Boundary County, and Governor Otter moved to intervene on December 9, 10, and 23, respectively. The Court entered a second order on January 31, 2014, requiring the

**REPORT AND RECOMMENDATION - 11**

administrative record by March 28, 2014, and setting summary judgment deadlines of May 23, 2014, for Plaintiff to file and August 8, 2014, for Defendants to respond and file their cross motion. Plaintiffs timely filed their motion for summary judgment on May 23, 2014.[5]

All intervenors contend they will work cooperatively to coordinate a response to the motion for summary judgment and appropriately limit their participation. The Court finds the three motions to be timely.

### 3.     PERMISSIVE INTERVENTION

Permissive intervention under Fed. R. Civ. P. 24(b) requires only that an intervenor's claim or defense share a common question of law or fact with the main action and that the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). *See also Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).[6] If the common question of law or fact is shown, intervention is discretionary with the Court. *Id.* (noting permissive intervention was appropriate because "the presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case, which impacted large and varied interests."). *Id.* at 1111.

Liberally construing Rule 24(a), the Court above finds that the proposed intervenors have met the test for intervention as a matter of right. Alternatively, however, permissive intervention would be appropriate. As the Court did in *Kootenai Tribe*, this

---

[5] An additional motion to intervene was filed on April 30, 2014, by the Idaho State Snowmobile Association, Inc., and Bonner County. Plaintiffs filed a response on May 27, 2014.

[6] A movant must show also grounds for jurisdiction. *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. Cir. 1989). Plaintiffs have not contested that the Court lacks jurisdiction over intervenors and their claims or defenses.

Court finds that the proposed intervenors represent "large and varied interests" whose unique perspectives would aid the Court in reaching an "equitable resolution" in this proceeding. Furthermore, as stated above, the applicants for intervention filed their motions in a timely fashion and there is sufficient time for them to submit briefing on the motions for summary judgment. Contrary to Plaintiffs' arguments, the Court can adequately limit the impact of additional briefing by intervenors, and prescribe a briefing schedule and page limitations, or consider Plaintiffs' suggestion of one joint brief by all intervenors.[7]

Therefore, resolution of the motions for summary judgment will not be significantly delayed, and permissive intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." *See id*. n.10 (citing Fed. R. Civ. P. 24(b)(2)).

## CONCLUSION

For the reasons explained, the Court finds the motions to intervene are properly granted under Rule 24(a)(2), or alternatively under Rule 24(b). Intervenors may not file any briefs in opposition to the pending motion for summary judgment until further order of the Court.

---

[7] Alternatively, the Service in its response and cross-motion may alleviate the need for additional briefing by intervenors. Should the Service's briefing adequately address intervenors' respective concerns, the Court would anticipate allowing no further briefing from them.

**REPORT AND RECOMMENDATION - 13**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Motion to Intervene by the Kootenai Tribe of Idaho (Dkt. 9) be **GRANTED**.

2) Motion to Intervene by Boundary County (Dkt. 14) be **GRANTED**.

3) Motion to Intervene by Governor C.L. "Butch" Otter (Dkt. 20) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **June 19, 2014**

Honorable Candy W. Dale
United States Magistrate Judge