UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, CONSERVATION NORTHWEST, IDAHO CONSERVATION LEAGUE, SELKIRK CONSERVATION ALLIANCE, and THE LANDS COUNCIL,<br><br>          Plaintiffs,<br><br>v.<br><br>BRIAN KELLY, U.S. Fish and Wildlife Service Idaho State Supervisor, and U.S. FISH AND WILDLIFE SERVICE,<br><br>          Defendants. | Case No. 1:13-cv-00427-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Pending before the Court is the joint motion to intervene filed by the Idaho State Snowmobile Association and Bonner County. (Dkt. 33.) The movants seek to intervene as Defendants in support of the United States Fish and Wildlife Service's designation of critical habitat for the southern Selkirk Mountains population of woodland caribou. The movants seek to intervene as a matter of right, or alternatively, permissively, under Fed.

**REPORT AND RECOMMENDATION - 1**

R. Civ. P. 24. Only Plaintiffs oppose the motion.[1]

The Court previously recommended that motions to intervene filed by the Kootenai Tribe of Idaho, Boundary County, and Governor C.L. "Butch" Otter be granted. Plaintiffs filed no objection to the report and recommendation, which Judge Lodge adopted on July 11, 2014. Plaintiffs have filed a motion for summary judgment, and responses to that motion are due on August 18, 2014. Judge Lodge permitted the three intervening parties to file a combined response to the motion for summary judgment of no more than 24 pages, or alternatively individual responses of no more than 8 pages. (Dkt. 43.)

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter will be decided on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1. For the reasons stated below,

---

[1] United States District Judge Edward Lodge referred resolution of non-dispositive motions to the undersigned and directed entry of an appropriate order. (Dkt. 18.) Denial of a motion to intervene may be dispositive with respect to the movants' claims. *See* 28 U.S.C. § 636(b)(1)(B); *but see Los Cangris v. UMG Recordings, Inc.*, 2012 WL 1952824 (D. Puerto Rico May 30, 2012) (recognizing split of authority regarding the dispositive nature of motions to intervene, but deciding that such motions do not dispose of a party's claim because the applicants are not parties to the action); *see also Zepeda v. PayPal, Inc.*, 2014 WL 1653246 (N.D. Cal. 2014) (citing *Los Cangris*, and finding motion to intervene was not dispositive because it was not listed in 28 U.S.C. § 636(b)(1)(A)). Because of the split of authority, the Court will issue a report and recommendation. *See Magnus Pacific Corp. v. Advanced Explosives Demolition, Inc.*, No. 2:13-cv-0060-EJL-CWD, 2013 WL 6095427 (D. Idaho Nov. 20, 2013).

**REPORT AND RECOMMENDATION - 2**

the Court will recommend granting the motion.

## BACKGROUND[2]

Mountain caribou require large contiguous areas of high-elevation old growth coniferous forests with little or no disturbance from vehicles or other human activities. The primary threats to mountain caribou are habitat loss or fragmentation such as from timber harvest or wildfire, disturbances that displace caribou from their habitat such as snowmobile use in winter or off-road vehicle use in summer, and predation. These animals make movements between seasonal habitat types. Mountain caribou currently occupy mountainous terrain in eastern British Columbia and the Selkirk Mountains of northern Idaho and northeast Washington.

Due to the imperiled status of the southern Selkirk Mountains population of caribou, this population was emergency listed as endangered under the ESA on January 14, 1983 (48 Fed. Reg. 1722) and a final listing rule was published on February 29, 1984 (49 Fed. Reg. 7390). At the time of listing, only an estimated 25-30 animals existed in the population. Recovery Action Plans for the southern Selkirk Mountains woodland caribou written by the Woodland Caribou Recovery Team set a goal of 125 animals for this population. The current population is still below that goal.

In 2002, a coalition of environmental groups petitioned the Service to designate critical habitat for the endangered southern Selkirk Mountains caribou. The coalition sued the Service in 2009. A settlement of that lawsuit resulted in a proposed critical habitat rule being issued on November 30, 2011 (76 Fed. Reg. 74,018), and a final rule

---

[2] The background information is taken from the Complaint in this matter. The Court makes no factual findings by setting forth the background for the dispute.

on November 28, 2012 (77 Fed. Reg. 71,042). The proposed rule designated 375,562
acres of critical habitat. After considerable input,[3] the Service completed a draft final
rule selecting 227,100 acres of critical habitat for the final designation, and sent it to the
Regional Office for preliminary review near the end of July 2012.

In September of 2012, the Service significantly reduced the critical habitat
designation. The new recommendation eliminated all critical habitat in Idaho except a
small area near the borders of Washington and Canada, and resulted in a total of
30,010 acres of critical habitat. The new recommendation included only federal land,
with no critical habitat on state or private land. The final designation included 6,029
acres of federal land in Idaho. The Service did not allow for additional public
comment on the revised version of the critical habitat designation before it issued the
final rule.

Plaintiffs are asking the Court to set aside the final critical habitat designation for
the southern Selkirk Mountains population of woodland caribou and to order the Service
to complete a new critical habitat rule that complies with the law.

The applicants move to intervene under Fed. R. Civ. P. 24(a) or (b), because of
their respective economic interests in snowmobile recreation on federal land and the
revenue the recreation brings to their constituents and the community. The movants contend
that any action that would affect the final designation of critical habitat by expanding its
boundaries, as Plaintiffs propose, would adversely affect these interests. The movants
argue they each have a distinct and substantial interest in this litigation that differs from

---

[3] The review process is described in the Complaint.

**REPORT AND RECOMMENDATION - 4**

the interests of the other intervenors.

## ANALYSIS

1. **Legal Standard**

The Federal Rules of Civil Procedure set forth two types of intervention: 1) as a matter of right; and 2) permissive. *See* Fed. R. Civ. P. 24(a)(2), 24(b). To intervene as of right under Rule 24(a)(2), the proposed intervenor must demonstrate: (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the motion is timely; and (4) the applicant's interest may be inadequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Servs.*, 630 F.3d 1173, 1177 (9th Cir. 2011). The party seeking to intervene bears the burden of showing all requirements for intervention have been met. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002); *see also Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("failure to satisfy any one of the requirements is fatal to the application"). In determining whether intervention is appropriate, courts are guided primarily by practical and equitable concerns, and the requirements for intervention are broadly interpreted in favor of intervention. *City of Los Angeles*, 288 F.3d at 397, *cited in Wilderness Soc.*, 630 F.3d at 1179.

An applicant who seeks permissive intervention under Rule 24(b)(2) must prove it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis

**REPORT AND RECOMMENDATION - 5**

for jurisdiction over the applicant's claims. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.1998). The court must also consider whether "intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*; *see* Fed. R. Civ. P. 24(b)(3).

**2.     Intervention as of Right**

Although the only aspect of the four part test Plaintiffs challenge is whether each respective intervenor's interests are impaired, the Court must examine and determine the particulars of each application under all of the factors.

**A.     *Protectable Interest***

A sufficient protectable interest in an action for purposes of intervention is a "practical, threshold inquiry." *City of Los Angeles*, 288 F.3d at 398. No specific legal or equitable interest needs to be established. *Id.* By allowing a party with a practical interest in the outcome of the case to intervene, courts prevent or simplify future litigation and allow additional interested parties to express their views before the court. *See Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). But, the movant must demonstrate a significant interest protected by some law and related to the plaintiff's claim. *City of Los Angeles*, 288 F.3d at 398. *See also Wilderness Soc.*, 630 F.3d at 1180 ("intervenor will generally demonstrate a sufficient interest for intervention of right … if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'").

The Snowmobile Association's interest is that of its members' continued

access to snowmobile recreation activities in the Panhandle National Forest, which the Association claims likely will be reduced if the critical habitat area is expanded as a result of Plaintiffs' challenge. Bonner County's interest is economic, and its interests are closely intertwined with the Associations' interests, because the County contracts with the State of Idaho and the U.S. Forest Service to maintain the snowmobile trails. Bonner County also collects registration fees from snowmobile owners.

Plaintiffs do not dispute that the above interests are significant. The Court, taking the allegations as true as it is required to do, finds that abrogation of the critical habitat rule, and the uncertainty resulting from the need to promulgate a new critical habitat designation, would have an impact upon the various interests asserted by the applicants for intervention.

### B. *Impaired Ability to Protect Interest*

This question is a practical one and is satisfied whenever disposition of the action would put the applicant at a practical disadvantage in protecting its interest. *See* 7C Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1908.2 at 368 (3d ed. 2007 & Supp. 2010). Generally, if the applicant would be substantially affected in a practical sense by the determination of an action, he should be allowed to intervene. *See* Fed. R. Civ. P. 24 (advisory committee notes); *Arakaki v. Cateyano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Plaintiffs do not dispute this factor. The applicants argue that disposition of this case may impair the Association's interest in preserving outdoor recreation for its

**REPORT AND RECOMMENDATION - 7**

members, and Bonner County's recurring trail maintenance contracts with the state and the Forest Service.

The Court must accept all nonconclusory allegations submitted in support of intervention, and is directed to construe the factors broadly. Further, a proposed intervenor need not show that impairment is an "absolute certainty." *Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.*, No. 2:13-CV-0060-EJL-CWD, 2013 WL 6095427, at *4 (D. Idaho Nov. 20, 2013) (quoting *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011).

If Plaintiffs are granted the relief they request, the Service may need to conduct additional assessments, and eventually will draft a new critical habitat rule. Plaintiffs seek a larger area designated as critical habitat. A revision to the habitat designation will likely include more land within Idaho's borders, considering this was the intent expressed in the draft rule. Subjecting the proposed intervenors---the Association and Bonner County---to further review and uncertainty will have a fiscal impact, as well as other impacts. For instance, snowmobile users may decide to recreate elsewhere given the uncertainty of appropriate boundaries for snowmobile use within Bonner County. And Bonner County's contracts could be subject to nonrenewal.

Although the precise parameters of the interests are not definite or certain at this time, the Court is satisfied that the sum of such interests is significant, and the identified interests may be impaired by this action. If the proposed intervenors are not included, they may lose the opportunity to make the Court aware of the specific extent of the impact the rule abrogation will have on their respective interests. The

result will be the drafting of a new rule, which may not occur for some time, Plaintiffs are advocating for an increase in the critical habitat area. Such an increase will, according to the proposed intervenors, have a negative impact upon the interests they have identified.

Should the Court proceed and grant the relief requested, they will have lost the opportunity to fully protect their interests and limit the impact of the critical habitat designation.

### C. *Adequate Representation*

The Court considers three factors to determine the adequacy of representation: (1) whether the interest of a present party is such that it undoubtedly will make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki*, 324 F.3d at 1086. The burden on proposed intervenors in showing inadequate representation is minimal, and is satisfied if they demonstrate that representation of their interests "may be" inadequate. *Id*.

The most important factor among the above three is how the proposed intervenor's interest compares with the interests of the existing parties. *Perry*, 587 F.3d at 947 (citing *Arakaki*, 324 F.3d at 1086). But where the party and proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Id*.

**REPORT AND RECOMMENDATION - 9**

Plaintiffs contend that Boundary County and the State already share the same types of recreational and economic interests, and would adequately represent the Association's and Bonner County's interests in this matter.

But the proposed intervenors here focus generally upon the differing interests of the Service, on the one hand, whose interests are global, versus the intervenors' respective interests, which are, in this instance, hyper local. Although intervenors would join Defendants, the Service would not represent state and local interests during litigation. Further, the other intervenors have broader interests than the two under consideration. The Association and Bonner County have an extremely focused interest on snowmobile recreation and the impact of critical habitat designation on that type of recreational activity. Bonner County's economic interests are uniquely tied to snowmobile recreation as well. While Boundary County expressed its economic interests, they were unique to its constituents, and tied primarily to livestock permits and grazing.

Further, the Plaintiffs' opening brief illustrates that vastly reducing or eliminating snowmobile access and expanding the critical habitat area into Bonner county are two key aspects of the relief Plaintiffs seek. Plaintiffs explain that caribou need large contiguous areas to roam "with little or no vehicle access or disturbance," and that the increase in snowmobile trails have made the caribou more susceptible to predators. Pl. Brief at 3 (Dkt. 38).

Although the Service, intervenors, and proposed intervenors are all working to defend the current critical habitat rule, they each have distinct reasons and policy directives for doing so. The impact of any revision to the rule will be suffered by intervenors, not by the Service.

The Court therefore considers the proposed intervenors to have made the necessary showing.

   D.   *Timely Motion*

To determine whether a motion is timely, the Court considers (1) the stage of the proceedings at which intervention is sought; (2) prejudice to the other parties, and (3) the reason for and length of any delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Plaintiffs filed their complaint on September 30, 2013. The Court entered its litigation order setting certain deadlines on October 1, 2013. The Kootenai Tribe, Boundary County, and Governor Otter moved to intervene on December 9, 10, and 23, respectively. The Court entered a second order on January 31, 2014, requiring the administrative record by March 28, 2014, and setting summary judgment deadlines of May 23, 2014, for Plaintiff to file and August 8, 2014, for Defendants to respond and file their cross motion. Plaintiffs timely filed their motion for summary judgment on May 23, 2014.

The Association and Bonner County did not file their joint motion for intervention until April 30, 2014, just prior to the summary judgment deadline. The briefing was complete on June 16, 2014. The Court on July 11, 2014, issued its order adopting the June 19, 2014 Report and Recommendation allowing the Kootenai Tribe, Boundary County, and Governor Otter to intervene, and prescribing a page limitation and deadline for their briefs. The deadlines have not yet passed, because after granting an extension, the response brief to the summary judgment motion is not due until

**REPORT AND RECOMMENDATION - 11**

August 18, 2014.

Neither proposed intervenor offered any particular reason why their motion was filed over four months after the other intervenors filed their motion. However, the proceedings are still early, and would allow for the Court to propose a briefing schedule to accommodate these newly proposed intervenors' participation.

3. **Permissive Intervention**

Permissive intervention under Fed. R. Civ. P. 24(b) requires only that an intervenor's claim or defense share a common question of law or fact with the main action and that the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). *See also Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).[4] If the common question of law or fact is shown, intervention is discretionary with the Court. *Id*. (noting permissive intervention was appropriate because "the presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case, which impacted large and varied interests."). *Id*. at 1111. Liberally construing Rule 24(a), the Court finds that the proposed intervenors have met the test for intervention as a matter of right.

Alternatively, however, permissive intervention would be appropriate. As the Court did in *Kootenai Tribe*, the Court finds that the proposed intervenors represent "large and varied interests" whose unique perspectives would aid the Court in reaching an "equitable resolution" in this proceeding.

Furthermore, as stated, the applicants for intervention filed their motions in a

---

[4] A movant also must show grounds for jurisdiction. *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). Plaintiffs have not contested the Court's jurisdiction over intervenors and their claims or defenses.

relatively timely fashion and there is sufficient time for them to submit briefing on the motion for summary judgment. Contrary to Plaintiffs' arguments, the Court can adequately limit the impact of additional briefing by these proposed intervenors, and prescribe a briefing schedule and page limitations, or require these particular intervenors to file a joint brief considering their interests are aligned and concern the impact of the critical habitat designation on snowmobile recreation.[5]

Therefore, resolution of the motion for summary judgment will not be significantly delayed, and permissive intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." *See id*. n.10 (citing Fed. R. Civ. P. 24(b)(2)).

## CONCLUSION

For the reasons explained, the Court finds the joint motion to intervene is properly granted under Rule 24(a)(2), or alternatively under Rule 24(b). However, intervenors may not file any briefs in opposition to the pending motion for summary judgment until further order of the Court.

---

[5] Alternatively, the Service or the other three intervenors may alleviate the need for additional briefing by these proposed intervenors. Should other parties' briefing adequately address the proposed intervenors' respective concerns, the Court would anticipate allowing no further briefing from them.

**REPORT AND RECOMMENDATION - 13**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Motion to Intervene by the Idaho State Snowmobile Association and Bonner County (Dkt. 33) be **GRANTED**.

Because of the impending response deadline of August 18, 2014, to the motion for summary judgment, the Court will shorten time to file written objections to this Report and Recommendation. Written objections to this Report and Recommendation must be filed on or before **August 11, 2014,** pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **August 05, 2014**

Honorable Candy W. Dale
United States Magistrate Judge